**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA**

    **Plaintiff,**

  v.                                   Case No. 1:19-cr-70
                                         JUDGE DOUGLAS R. COLE

**DONTA McCOY,**

    **Defendant.**

## OPINION AND ORDER

This case comes before the Court on Defendant Donta McCoy's Motion to Suppress Evidence (Doc. 11). The Defendant requests that the Court suppress all evidence derived from his April 10, 2019 arrest. For the reasons below, the Court **DENIES** McCoy's Motion.

## BACKGROUND

On January 18, 2019, Cincinnati police were attempting to locate a 15-year old girl who this Opinion & Order will refer to as M.N. The police eventually tracked M.N. down to a hotel room at 4453 Reading Road that McCoy had been renting. After the police arrived, McCoy opened the door and the police observed M.N. on McCoy's bed.

On February 23, 2019, one of the initial responding officers, Officer Karen Parker, filed a complaint and an affidavit against McCoy in Hamilton County Municipal Court. Parker alleged that, per M.N.'s victim statement, M.N. had engaged in sexual intercourse with McCoy while staying in his hotel room. The complaint

charged McCoy with violating Ohio Revised Code 2907.04. That law prohibits anyone aged eighteen or older from knowingly or recklessly engaging in sexual conduct with someone (other than the offender's spouse) who is older than thirteen but less than sixteen. O.R.C. § 2907.04(A). After Parker filed the affidavit and complaint, a deputy clerk of the Hamilton County Municipal Court determined that there was probable cause to issue an arrest warrant, and officers arrested McCoy the next day. But, for whatever reason—nothing in the record explains it—when the State presented the sexual-abuse charge to a Hamilton County grand jury on March 5, 2019, the grand jury did not return an indictment.

That was not the end of the matter. On April 10, 2019, Cincinnati Officer William Wolner filed a complaint and affidavit in Hamilton County Municipal Court alleging that McCoy had violated Ohio Revised Code Section 2907.04—the same statute that Officer Parker had accused McCoy of violating.[1] Wolner's affidavit, like Parker's affidavit, explained that the factual basis for the charge was McCoy's sexual contact with M.N. The affidavit stated:

> [O]n or about the 18th day of January, 2019, at Cincinnati, Ohio Donta McCoy did … engage in sexual conduct (vaginal sex) with the victim, M.N. … on multiple occasions. M.N. made disclosures [that] this sexual conduct occurred during a forensic interview with a social worker from Children's Hospital's Mayerson Center For Safe and Healthy Children. M.N. also picked the defendant out of a photo lineup administered by a blind administrator. M.N. was located by police in a hotel room at 4453 Reading Rd. to which the defendant had a key to on his person at the

---

[1] For the April 10, 2019, charges, two complaints, two affidavits, and two warrants were filed across two different case numbers (case numbers 19CRA8629A and 19CRA8628B) with the Hamilton County Municipal Court. But each document in one case is identical to its corresponding document in the other case. Thus, while the Court only refers to one affidavit, complaint, and warrant, its analysis applies equally to the other affidavit, complaint, and warrant.

2

> time of police arrival. The defendant is on body worn camera footage opening up the hotel room door for police, who then observe M.N. on the bed inside the hotel room. M.N. is of no relation to the defendant.

(McCoy Ex. 2, Aff., #2[2]).

A deputy clerk of the Hamilton County Municipal Court once again found there was probable cause to issue an arrest warrant. Roughly thirty minutes after the warrant issued, two Cincinnati police officers—Officers Manz and Wermuth—spotted McCoy parked in a gas-station lot where drug activity often occurs. The officers ran McCoy's plates, saw the warrant for his arrest on their computer system, and then approached and ultimately arrested him based on that warrant. When searching McCoy incident to that arrest, the officers located a 9mm handgun, as well as a small amount of narcotics. About a week after his arrest, prosecutors again sought to indict McCoy for allegedly violating O.R.C. § 2907.04. But, once again, the grand jury declined to indict.

McCoy's legal woes did not stop there. The U.S. Attorney's Office decided to take McCoy before a federal grand jury, which indicted him for possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). The charge was based on the firearm that Manz and Wermuth recovered from McCoy when they arrested him on April 10, 2019.

On May 4, 2020, McCoy moved to suppress that evidence. In his Motion (Doc. 11), McCoy claims that Wolner must have known, on April 9, 2019, when he sought

---

[2] Neither the Government's nor McCoy's exhibits have page numbers, nor are the exhibits filed on the Court's electronic docket. Thus, for exhibit citations in this Opinion & Order, the number following # refers to the physical page number within a particular exhibit. Thus, McCoy Ex. 2, Aff., #2 refers to the second page within McCoy's Exhibit 2.

3

the second arrest warrant, that Hamilton County prosecutors had already once tried to have a grand jury indict McCoy for allegedly engaging in the same sexual misconduct. McCoy claims that Wolner simply took Parker's affidavit from the first warrant, and then "retyped it" when filling out his own affidavit without having any firsthand knowledge of the facts underlying the case. (McCoy Mot. to Suppress, Doc. 11, #38). McCoy also argues that Wolner must have been coordinating with Officers Manz and Wermuth, given how soon they arrested McCoy after the April 10, 2019, warrant issued.

More to the point here, McCoy argues that the evidence against him in this case (the gun) should be suppressed because the affidavit Wolner used to secure the warrant in the state case was legally deficient. Why? Because, first, according to McCoy, Wolner intentionally failed to disclose in his affidavit that Parker had already attempted to indict McCoy on the same sexual-abuse charge, for the same conduct, and that the grand jury had declined to indict him. And, second, McCoy alleges that Wolner lacked factual knowledge for obtaining a warrant other than Parker's affidavit, which Wolner "merely regurgitate[d]" when swearing out his own. (*Id.*). For both (seemingly independent) reasons, McCoy argues that Wolner's affidavit was not supported by probable cause, meaning that the warrant, and the subsequent arrest and search that followed from that warrant, were all improper.

The Court held a hearing on the Motion on April 13, 2021. Neither party requested post-hearing briefing, so the matter is now ripe for the Court's decision.

## LAW AND ANALYSIS

Although both of McCoy's arguments raise interesting legal issues, the hearing revealed that both arguments were based on faulty factual premises. Thus, the Court can, and does, deny the Motion without reaching a conclusive determination on either legal issue that McCoy presses.

McCoy's first argument is that the warrant Wolner obtained was not supported by probable cause because Wolner intentionally omitted material information from the affidavit that he filed with the deputy clerk. That information was the fact that prosecutors had already attempted to indict McCoy on the same charge arising out of the same conduct, and the grand jury had declined to indict.

It is well established that if an officer intentionally or recklessly omits material information from an affidavit used to obtain a warrant, evidence obtained pursuant to that warrant may be suppressed. *See, e.g.*, *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008); *see also Franks v. Delaware*, 438 U.S. 154, 156 (1978). The omitted information is material if the "finding of probable cause would not be supported by the affidavit if the [information] were considered to be a part of it." *Fowler*, 535 F.3d at 415; *see also Franks* 438 U.S. at 156.

The specific issue raised by McCoy's argument is this: whether failing to mention that a grand jury declined to indict constitutes a material omission when an officer later files an affidavit for a warrant based on the same underlying facts that had previously been submitted to the grand jury. Neither party cited a single case providing a "yes" or "no" answer to that question. And, at the hearing, both parties confirmed that they were unable to locate precedent squarely addressing the issue.

5

The Court nonetheless has its doubts that the answer to that question could be "yes." To start, a grand jury's decision not to indict does not necessarily mean that the grand jury found that the State lacked probable cause to indict. Even if that is what the grand jury concluded on the first go around, it is unclear that such a determination would necessarily be material to a neutral clerk's later independent evaluation of the evidence, especially as the quantum of evidence that is available can change over time (more on that below).

Whatever the answer to that question may be, however, it turns out not to matter in *this* case. That is because of what the Court (and evidently the defense) learned from Wolner's uncontroverted testimony at the hearing: At the time Wolner obtained the warrant, he had no clue that prosecutors had already tried to indict McCoy on the same charge. He found that out only when he showed up to testify before the grand jury approximately a week *after* McCoy's April 10, 2019, arrest. Wolner's only contact with Parker on this case appears to have been indirect and occurred around the time that the case was first opened. Parker, who is a patrol officer, was listed as the initial responding officer on an email notification that Wolner received in his role as a member of the police department's sexual-abuse unit. Thereafter, the evidence shows that Wolner's and Parker's investigations proceeded on separate tracks. Indeed, Wolner testified that he was surprised to learn that the case had previously gone to the grand jury, as members of the sexual-abuse unit, not patrol officers, almost exclusively present such cases for indictment. That is because officers in the sexual-abuse unit typically undertake various investigative methods—

6

psychologist interviews with the victims, physical examinations, crime lab testing, etc.—to gather information before they present the charge.

McCoy did not (perhaps because he could not) controvert Wolner's testimony on this point in any way during the hearing. The Court therefore accepts Wolner's testimony as true and concludes that Wolner did not intentionally[3] omit information about the grand jury's earlier no bill when seeking the April 10, 2019, warrant.

Wolner's testimony at the hearing also torpedoed the factual premise underlying McCoy's second argument: that Wolner (1) had no first-hand knowledge about the case, and (2) merely relied on Parker's affidavit when he sought a warrant. McCoy contends that Wolner's lack of such knowledge was a separate reason showing why McCoy's affidavit failed to support a probable cause finding.

As an initial matter, the Court again doubts that McCoy's legal conclusion follows from his factual premise. At least one court has concluded that "an officer who has no personal knowledge of facts asserted in an affidavit [may] rely on information provided by another officer to file a warrant application." *Bennett v. City of Grand Prairie,* 883 F.2d 400, 410 (5th Cir. 1989). Yet the Court need not decide that issue because, again, McCoy's factual premise is wrong.

At the hearing, Wolner testified that, among other things, he personally (1) reviewed bodycam footage of officers opening McCoy's hotel room and finding M.N.

---

[3] To be sure, suppression may be warranted where an officer *recklessly*, as opposed to intentionally, omits material information from an affidavit while seeking a warrant. *See Fowler*, 535 F.3d at 415; *see also Franks*, 438 U.S. at 156. But McCoy did not advance any argument about Wolner being reckless in failing to discover and mention the grand jury's earlier no bill.

7

on McCoy's bed; (2) reviewed M.N.'s sexual-assault kit; and (3) attended a forensic interview in which M.N. disclosed that McCoy had engaged in sexual conduct with her on multiple occasions. None of this testimony is too surprising. After all, Wolner's affidavit included many *more* facts supporting a finding of probable cause than did Parker's. Unlike Parker's affidavit, for example, Wolner's affidavit mentioned the forensic interview and that M.N. had picked the defendant out of a photo lineup. In any event, Wolner's uncontroverted testimony establishes that he had first-hand knowledge of most, if not all, of the facts he included in his affidavit. McCoy's contrary argument lacks evidentiary support, and the Court thus rejects it.

One more point. McCoy claims that Manz and Wermuth must have been working together with Wolner, given how quickly they arrested McCoy after the April 10, 2019, warrant issued. McCoy suggests that this means the government cannot rely on *United States v. Leon*'s good-faith exception to the Fourth Amendment exclusionary rule. 468 U.S. 897 (1984). This argument fails for at least two reasons. First, as the Court rejects McCoy's challenges to the probable cause determination underlying the warrant, the government has no need to resort to the good-faith exception. Second, Wermuth testified at the hearing that he and Manz did not, in fact, act in tandem with Wolner. McCoy did not contravene Wermuth's testimony in any way. For both reasons, the Court rejects McCoy's argument relating to the good-faith exception.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** McCoy's Motion to Suppress (Doc. 11).

**SO ORDERED.**

April 27, 2021
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**